UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON PARENT COALITION FOR ACADEMIC EXCELLENCE CORP., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>BOSTON SCHOOL COMMITTEE and )<br>MARY SKIPPER, in her official capacity as )<br>Superintendent of the Boston Public Schools, )<br>Defendants. ) | No. _____<br><br>**COMPLAINT** |

**INTRODUCTION**

1.      Boston Latin School (BLS) is the oldest continually-operating school in America. Its alumni include five signers of the Declaration of Independence, four Harvard Presidents, and one particularly famous dropout: Benjamin Franklin. Together with Boston Latin Academy (BLA) and the John D. O'Bryant School of Science and Mathematics, BLS is one of three "Exam Schools," which collectively enroll nearly six thousand students and are recognized as some of the best public high schools in the nation.

2.      Until recently, the Exam Schools were also known for their objective, merit-based admission criteria. For many years, invitations were solely based on an applicant's grade point average and his or her score on an objective examination.

3.      But since 2020, the Boston School Committee has been consumed with changing the racial composition of students at the Exam Schools—especially BLS. In service of this racial balancing project, the School Committee has twice replaced the venerable merit-based process with criteria designed to limit the proportion of white and Asian-American students who can access the Exam Schools. Now, by clustering most white students together in one "tier" where they

compete only against each other for Exam School seats, the current Tier System "succeeded" in reducing the proportion of white students admitted to the Exam Schools below the group's share of the applicant pool three years in a row.

4.      The School Committee's focus on race is contrary to the basic American ideal that people should be treated as individuals, not as interchangeable members of their racial groups. This ideal is best expressed in the Fourteenth Amendment's Equal Protection Clause, which guarantees each individual equality before the law. When the School Committee inserts racial proxies into the admissions process, it privileges the group over the individual, violating the rights of those who fall on the wrong side of the proxy simply because they were more likely to belong to a disfavored racial group.

5.      The Boston Parent Coalition for Academic Excellence (the Coalition) brings this civil rights lawsuit to vindicate the rights of these individuals. The Coalition represents members whose children were denied admission to an Exam School under the racially discriminatory Tier System, as well as members with children who plan to apply to the Exam Schools in the coming years. It alleges that the School Committee designed and implemented the Tier System as a racial proxy to reduce the number of white students admitted to the Exam Schools. It also alleges that this racial proxy worked, making it much more difficult for white students to gain admission to the Exam Schools. Indeed, under the Tier System, the invitation rate of white students has sunk below even the proportion of Exam School applicants who were white.

6.      The Fourteenth Amendment's Equal Protection Clause guarantees every qualified Boston student an equal opportunity to compete for a place in an Exam School, regardless of race. The Tier System was implemented to limit that opportunity for members of a particular racial group. It must be struck down.

## JURISDICTION AND VENUE

7.      The Coalition brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983, for the violation of rights secured by the Fourteenth Amendment to the United States Constitution.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

9.      Venue is proper under 28 U.S.C. § 1391(b), on the ground that all or a substantial part of the acts giving rise to the Coalition's claims have occurred or will occur in the District of Massachusetts.

## PARTIES

### Plaintiff Boston Parent Coalition

10.     Plaintiff Boston Parent Coalition for Academic Excellence Corp. is a nonprofit organization established under the laws of Massachusetts. Its purposes include promoting merit-based admissions to Boston Exam Schools and promoting diversity in Boston high schools by enhancing K-6 education across all schools in Boston. The Coalition was formed in part to oppose the School Committee's pursuit of racial balancing in Exam School admissions.

11.     The Coalition's members include families of current Exam School students and future applicants who agree with the Coalition's purposes and objectives and meet such other criteria the Coalition may set through its Board of Directors.

12.     The Coalition brings this action on behalf of its members whose children are students who have been denied admission to an Exam School under the Tier System. These members and their children include, but are not limited to:

a. Member Courtney Connolly and student M.C., her child. M.C. is white, lives in Tier 4, and applied for seventh grade admission to the Exam Schools for 2025-2026. M.C. had a composite score of 96.36 and was not eligible for bonus points. M.C. was denied admission to first-choice BLS and offered admission to second-choice BLA.

b. Member Carl Hall and E.H., his child. E.H. is white, lives in Tier 4, and applied for seventh grade admission to the Exam Schools for 2025-2026. E.H. had a composite score of 93.30 and was not eligible for bonus points. E.H. was denied admission to first-choice BLS and did not apply to BLA or O'Bryant.

c. Member Kerry Hawkins and A.H., her child. A.H. is white, lives in Tier 4, and applied for seventh grade admission to the Exam Schools for 2025-2026. A.H. had a composite score of 97.12 and was not eligible for bonus points. A.H. was denied admission to first-choice BLS, where A.H. missed the cutoff score by less than three-tenths of a point. A.H. was offered admission to second-choice O'Bryant.

d. Member Shauna DeMarco and G.D., her child. G.D. is white, lives in Tier 4 (in a home across the street from Tier 3), and applied for seventh-grade admission to the Exam Schools for 2025-2026. G.D. had a composite score of 86.06 and was not eligible for bonus points. G.D. was denied admission to all three Exam Schools, including first-choice BLS.

e. Member Marlo D'Anna and D.D., her child. D.D. is white, lives in Tier 4 (in a home that is across the street from Tier 3), and applied for seventh-grade admission to the Exam Schools for 2025-2026. D.D. had a composite score of 94.39 and was not eligible for bonus points. D.D. was denied admission to first-choice BLS and offered admission to second-choice BLA.

f.  Member Olga Kader and J.M., her child. J.M. is white and applied for seventh-grade admission to the Exam Schools for 2024-2025, when J.M. was classified as a Tier 8 resident with a composite score of 93.48 and was not eligible for bonus points. J.M. was denied admission to all three Exam Schools, including first-choice BLS. J.M is now classified as a Tier 4 resident and will apply for ninth-grade admission to the Exam Schools for 2026-2027.

g.  Member Kerry Akashian and F.P., her child. F.P. is white and applied for seventh-grade admission to the Exam schools for 2023-2024, when F.P. was classified as a Tier 7 resident with a composite score of 93.1. F. P. was denied admission to all three Exam Schools, including first-choice BLS. F.P. also applied for ninth-grade admission to the Exam Schools for 2025-2026 and was classified as a Tier 3 resident with a composite score of 95.6. F. P. was not eligible for bonus points. F.P. was denied admission to first-choice BLS and offered admission to second-choice BLA.

h.  Member Sheila Dhar and A.D. and S.D., her children. A.D. and S.D. are Asian American and applied for seventh-grade admission to the Exam Schools for 2023-2024. Both children were classified as residents of Tier 7 and were not eligible for bonus points; A.D. had a composite score of 97.6 and S.D. had a composite score of 95.6. Both children were denied admission to first-choice BLS and A.D. was offered admission to third-choice BLA. S.D. applied for ninth-grade admission to the Exam Schools for 2025-2026, where S.D. was classified as a Tier 4 resident with a composite score of 96.1. S.D. was not eligible for bonus points. S.D. was denied admission to first-choice BLS and offered admission to second-choice BLA.

i.  Member Adrienne Greene and A.G., her child. A.G. is white and applied for seventh-grade admission to the Exam Schools for 2024-2025. A.G. was classified as a Tier 8 resident, had a composite score of 98.64, and was not eligible for bonus points. A.G. was denied admission to first-choice BLS and offered admission to second-choice BLA.

j.  Member Michelle Donovan and I.D., her child. I.D. is white and applied for seventh-grade admission to the Exam Schools for 2023-2024, when I.D. was classified as a Tier 8 resident. She had a composite score of 90.606 and was not eligible for bonus points. I.D. was denied admission to first-choice BLS and second-choice BLA. I.D. also applied for ninth-grade admission to the Exam Schools for 2025-2026 and was classified as a Tier 4 resident. I.D. was denied admission to first-choice BLS and was offered admission to second-choice BLA as a ninth grader for 2025-2026.

k.  Member Diana Munera and D.M., her child. D.M., who is white and Hispanic, applied for seventh-grade admission to the Exam Schools for 2023-2024. D.M was classified as a Tier 6 resident, had a composite score of 92.9, and was not eligible for bonus points. DM. applied for ninth-grade admission to the Exam Schools for 2025-2026. D.M. was classified as a Tier 3 resident, had a composite score of 88.2, and was not eligible for bonus points. In both instances, D.M. was denied admission to only-choice BLS.

l.  Member Kellie Van and Z.L, her child. Z.L is Asian American and applied for seventh-grade admission to the Exam Schools for 2023-2024. Z.L. was classified as a Tier 8 resident with a composite score of 97.12 and was not eligible for bonus points. Z.L. was denied admission to only-choice BLS. Z.L. applied for ninth-grade admission to the Exam Schools for 2025-2026, where Z.L was classified as a Tier 4 resident with a

composite score of 95.9. Z.L. was denied admission to first-choice BLS and offered admission to second-choice BLA.

m. Member Jaime Dutton and I.G., her child. I.G. is white and applied for seventh-grade admission to the Exam Schools for 2023-2024. I.G. was classified as a Tier 8 resident, had a composite score of 90.1, and was not eligible for bonus points. I.G. applied for ninth grade admission to the Exam Schools for 2025-2026. I.G. was classified as a Tier 4 resident, had a composite score of 95.8, and was not eligible for bonus points. In both instances, I.G. was denied admission to first-choice BLS. I.G. was admitted to second-choice O'Bryant as a ninth grader for 2025-2026.

n. Member Kim Perry and W.P., her child. W.P. is white and applied for seventh-grade admission to the Exam Schools for 2024-2025. W.P was classified as a Tier 8 resident, had a composite score of 97.56, and was eligible for bonus points. W.P. was denied admission to first-choice BLS and offered admission to second-choice BLA.

o. Member Kristin O'Donnell and E.O., her child. E.O. is white and applied for seventh-grade admission to the Exam Schools for 2025-2026. E.O. was classified as a Tier 4 resident, had a composite score of 96.82, and was not eligible for bonus points. E.O. was denied admission to first-choice BLS and offered admission to second-choice BLA.

p. Member John Houton and J.H., his child. J.H. is white and applied for seventh-grade admission to the Exam Schools for 2025-2026. J.H. was classified as a Tier 1 resident, had a composite score of 89.7, and was not eligible for bonus points. J.H. was denied admission to first-choice BLS and offered admission to second-choice O'Bryant.

q. Member Aislin Moylan and Q.D., her child. Q.D. is white and applied for seventh-grade admission to the Exam Schools for 2025-2026. Q.D. was classified as a Tier 4 resident, had a composite score of 84.53, and was eligible for bonus points. Q.D. was denied admission to all three Exam Schools, including first-choice BLS.

13.     Because these students were denied admission to their Exam School of choice due to their race, court-ordered admission to those schools is the only remedy for this race-based harm.

14.     The Coalition also brings this action on behalf of its members whose children are students who intend to apply for admission to an Exam School when they reach the appropriate grade. Unless permanently enjoined, the Tier System will negatively impact these students' chance of being admitted to an Exam School. These members and their children include, but are not limited to:

a. Member Elizabeth Brooks and student A.B, her child. A.B. is white, lives in Tier 4, and will apply for seventh-grade admission to the Exam Schools for 2026-2027.

b. Member Lauren Woods and student G.W, her child. G.W. is white, lives in Tier 4, and will apply for seventh-grade admission to the Exam Schools for 2026-2027.

c. Member Francis Guardabascio and L.G. and A.G., her children. L.G. and A.G. are Asian American, live in Tier 4, and will apply for seventh-grade admission to the Exam Schools for 2026-2027.

d. Member Lauren Trimble and student J.T., her child. J.T. is white, lives in Tier 4, and will apply for seventh grade-admission to the Exam Schools for 2027-2028.

e. Member Ruisheng Wang and R.H., her child. R.H. is Asian American, lives in Tier 4, and will apply for seventh-grade admission to the Exam Schools for 2027-2028.

f.    Member Elizabeth Glaze and student R.G., her child. R.G. is white, lives in Tier 4, and will apply for seventh-grade admission to the Exam Schools for 2028-2029.

g.    Member Jessica McCollom and student E.M., her child. E.M. is white, lives in Tier 4, and will apply for seventh-grade admission to the Exam Schools for 2026-2027.

h.    Member Kerry Hawkins and student R.H., her child. R.H. is white, lives in Tier 4, and will apply for seventh-grade admission to the Exam Schools for 2028-2029.

i.    Member Molly Murphy and student T.M., her child. T.M. is white, lives in Tier 4, and will apply for seventh-grade admission to the Exam Schools for 2026-2027.

15.    The Tier System was implemented at least in part to reduce the share of white students at the Exam Schools. It harms these members and their children by subjecting the children to an application process that treats them differently due to their race, in violation of their constitutional right to be free from racial discrimination. Unless permanently enjoined, the Tier System will negatively impact these students' chance of being admitted to an Exam School.

*Defendants*

16.    Defendant Boston School Committee is the governing board of the Boston Public Schools (BPS). In this capacity, it operates the three Exam Schools and has the authority to determine their admissions criteria and direct the Superintendent and other BPS employees to implement it. The School Committee developed and adopted the race-based Tier System the Coalition challenges in this action.

17.    Defendant Mary Skipper is the Superintendent of the Boston Public Schools and has responsibility for implementing and enforcing the unlawful race-based admissions policy at

issue in this case, both on her own and through her subordinate BPS employees. She is sued in her official capacity only.

## FACTUAL ALLEGATIONS

### Exam Schools Background

18.    The three Exams Schools are Boston Latin School (BLS), Boston Latin Academy (BLA), and the John D. O'Bryant School of Mathematics and Science (O'Bryant). Together, they enroll about 6,000 students in grades 7-12.

19.    Currently ranked as the top three public high schools in Boston[1]—and numbers one, six, and nine statewide—the Exam Schools offer significantly better educational opportunities than those available at other Boston public high schools.

20.    As a result, admission to the Exam Schools is highly competitive. For example, for the seventh-grade class entering in the fall of 2020, nearly 3,000 students applied for the approximately 1,000 available seats across the three schools.[2] For the 2024-2025 school year, over 1,300 rising seventh-grade students applied for 976 available seats.[3]

21.    Admission to the Exam Schools generally proceeds on two tracks. The vast majority of seats at BLS and BLA are awarded to incoming seventh graders, with a smaller pathway to admission for incoming ninth graders, primarily designed to fill seats vacated by

---

[1] U.S. News & World Report, *High Schools in Boston Public Schools District*, https://www.usnews.com/education/best-high-schools/massachusetts/districts/boston-public-schools-111992 (last visited July 14, 2025).

[2] Boston Public Schools, SY 21-22 Admissions Data, https://www.bostonpublicschools.org/enrollment/welcome-services/grade-levels-overview/exam-schools/exam-school-data-summaries/sy-21-22-admissions-data (last visited July 14, 2025).

[3] Memorandum from Apryl Clarkson, Sr. Executive Director at Boston Public Schools to Mary Skipper, Superintendent, SY24-25 Exam School Invitation Summary (Dec. 2024), https://drive.google.com/file/d/17JvFW8gbfaAxkjoCB_chsRUWog72XTts/view.

attrition. O'Bryant admits a somewhat smaller seventh-grade class and a larger ninth-grade class, with a handful of students admitted in tenth grade to fill seats vacated by attrition.

### BPS' Historic Attempts to Control the Racial Makeup of the Exam Schools

22.     The racial composition of the Exam Schools has been a focus of attention for decades. The United States District Court for the District of Massachusetts placed BPS under a desegregation order in 1974. Upon finding the Exam Schools were complicit in BPS' maintained segregation, a district court ordered BPS to set aside 35% of Exam School seats for black and Hispanic applicants. The First Circuit upheld this set-aside in *Morgan v. Kerrigan*, 530 F.2d 401, 425 (1st Cir. 1976).

23.     The district court declared BPS a unitary (desegregated) district in 1987 and dissolved the desegregation order. Nevertheless, BPS chose to maintain the 35% racial set-aside.

24.     BPS maintained the 35% set-aside until 1996, when the district court ordered BPS to admit to BLS a white student who had been unsuccessful as a seventh-grade applicant. After finding the set-aside likely violated the student's equal protection rights, the court granted a motion for preliminary injunction and ordered the applicant admitted to BLS for her eighth-grade year. *McLaughlin by McLaughlin v. Boston School Committee*, 938 F. Supp. 1001 (D. Mass. 1996).

25.     After that setback, BPS did not abandon racial considerations. Instead, the School Committee and BPS officials immediately began researching various proposals designed to preserve the racial balance of the Exam Schools that the set-aside had achieved.

26.     The system BPS implemented for the 1997-98 school year allocated half the seats in a merit-based manner using GPA and exam score only, but set aside the other half for allocation "on the basis of 'flexible racial/ethnic guidelines.'" *Wessmann v. Gittens*, 160 F.3d 790, 793 (1st Cir. 1998). The First Circuit quickly invalidated that plan, too, and ordered BPS to admit to BLS

a white student who would have earned a seat but for the School Committee's racial balancing. *Id.* at 809.

27.    After losing the *Wessmann* case, BPS reverted to a citywide competition for all Exam School seats based only on an applicant's GPA and his or her score on an objective examination, which at that point was the Independent School Entrance Exam (ISEE). This persisted until the School Committee again became consumed with the racial composition of the Exam Schools in 2020.

***The Zip Code Quota Plan (2021-2022)***

28.    Mirroring its behavior after the district court struck down the 35% set-aside in *McLaughlin*, in 2019 BPS again began to study various proposals to promote racial balancing at the Exam Schools.

29.    In July 2020, the School Committee accepted then-Superintendent Brenda Cassellius' recommendation to establish the Exam School Admissions Criteria Working Group charged with making a recommendation for a new set of Exam School admissions criteria.

30.    Although it was nominally tasked to develop an admissions plan that would work under the unique conditions of the COVID-19 pandemic, the Working Group's efforts revealed an almost singular focus on the racial composition of the Exam Schools. Public comments by members of the Working Group showed the purpose of its recommendation was to racially balance the Exam Schools at the expense of white and Asian-American applicants.

31.    Working Group member Tanisha Sullivan, president of the NAACP-Boston Branch, told the School Committee that racial gaps in assessment score and GPA between white

and Asian-American students on one hand and Black and Hispanic students on the other "played a significant role in what we will ultimately recommend."[4]

32.    Working Group member Samuel Acevedo, BPS' Opportunity and Achievement Gap Task Force Co-Chair, said that one of the Working Group's "imperatives" was "rectifying historic racial inequities afflicting Exam School admissions for generations."

33.    The Working Group's recommendation, which the School Committee ultimately adopted for school year 2021-2022 with only a slight revision, was to eliminate the longstanding Citywide competition in favor of the Zip Code Quota Plan. The Zip Code Quota Plan eliminated the ISEE, leaving GPA as the sole academic criterion for admission.

34.    The Zip Code Quota Plan reserved 20% of Exam School seats for students with the highest GPAs regardless of zip code. The remaining 80% were allocated proportionally to each zip code in Boston based on each zip code's population of school-aged children. The result was that a much higher GPA was necessary to receive an Exam School invitation from zip codes with disproportionately more white and Asian-American students.

35.    In considering the Working Group's recommendations, School Committee members were explicit about the focus on racial balancing.

36.    At an October 8, 2020, School Committee meeting, former member Lorna Rivera endorsed the Working Group's racial balancing mission and pointed out, "the issue of just really naming it you know, and really considering race and ethnicity." She went on to say that the School Committee needs to be "explicit about racial equity, and we do need to figure out again how we could increase those admissions rates, especially for Latinx and black students."

---

[4] The deliberations of the Working Group and the School Committee regarding the Zip Code Quota Plan appear in the record of *Boston Parent Coalition for Academic Excellence Corp. v. School Committee of City of Boston*, No. 1:21-cv-10330-WGY (D. Mass.) (ECF # 38 & exhibits).

37.     Two weeks later she was more explicit, saying the Zip Code Quota Plan was a good first step but "it doesn't go far enough because white students would continue to benefit from 32 percent of the seats according to this plan. Look at the data, it's not a huge change for Asian and white families."

38.     Former School Committee member Alexandra Oliver-Davila said she "want[s[ to see those schools reflect the District. There's no excuse, you know, for why they shouldn't reflect the District, which has a larger Latino population and black African-American population." She went further at the School Committee's October 21, 2020, meeting, complaining it was "criminal" and "racist" that black and Hispanic admission percentages had not increased and stating that "all of our schools should reflect the student body that we have."

39.     Also at the October 21 meeting, then-School Committee chairperson Michael Loconto was caught on a hot mic ridiculing the names of Asian-American parents who had signed up to speak in opposition to the Zip Code Quota Plan, while members Rivera and Oliver-Davila texted each other laughing about it in real time—messages which the district court in the previous case accurately called "racist." *Boston Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Boston*, No. 1:21-cv-10330-WGY, 2021 WL 4489840, at *12 (D. Mass. Oct. 1, 2021).

40.     In one exchange, after Oliver-Davila texted Rivera "[b]est sc mtg [School Committee meeting] ever I am trying not to cry," Rivera responded, "Me too!! Wait til the white racists start yelling [a]t us!" Oliver-Davila then responded, "[w]hatever … they are delusional." Oliver-Davila then texted, "I hate W[est] R[oxbury]," referring to a Boston neighborhood which historically has had a large number of white Exam School applicants and invitees. Rivera responded that she was "[s]ick of westie whites" and Oliver-Davila confirmed, "[m]e too I really feel like saying that!!!!" *See id.* at *8.

14

41.    Loconto was forced to resign in the wake of his racist hot mic comments. Oliver-Davila, who called that incident the "[b]est sc mtg [School Committee meeting] ever," was promoted to acting chairperson.

42.    The Zip Code Quota Plan was successful in its goal of excluding white and Asian-American students. As the Working Group's simulations predicted, the total share of Asian-American and white students admitted to the Exam Schools fell from 61% to 49%. White applicants bore the brunt of that—the group's share of Exam School seats fell from 40% to 31% following the implementation of the Zip Code Quota Plan.

***Boston Parent Coalition Challenges Zip Code Quota Plan***

43.    In February 2021, on behalf of families of 14 students who had applied to the Exam Schools that year, the Coalition challenged the Zip Code Quota Plan in federal court. The district court entered judgment in favor of the School Committee and the Coalition appealed.

44.    Before briefing began on the merits of the appeal, the Boston Globe published its June 7, 2021, exposé of the racist text messages between Oliver-Davila and Rivera.[5]

45.    The Coalition sought Rule 60(b) relief from the district court judgment, and the district court withdrew its initial opinion on the ground that it was "factually inaccurate." *Boston Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of the City of Boston*, No. 1:21-cv-10330-WGY, 2021 WL 3012618, at *1 (D. Mass. July 9, 2021).

46.    While the district court ultimately denied Rule 60(b) relief, it found that "[t]hree of the seven School Committee members harbored some form of racial animus" and that the Zip Code

---

[5] *See* Marcela Garcia, *Boston School Committee member resigns over texts*, The Boston Globe, June 7, 2021, https://www.bostonglobe.com/2021/06/07/opinion/boston-school-committee-member-resigns-over-texts/.

Quota Plan's facially race-neutral criteria "were chosen precisely because of their effect on racial demographics." *Boston Parent*, 2021 WL 4489840, at *15.

47.     The First Circuit affirmed, but only on the ground that the Coalition had failed to demonstrate adequate disparate impact because the proportion of white and Asian-American students admitted to the Exam Schools was still higher than those groups' share of the applicant pool. *Boston Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for City of Boston*, 89 F.4th 46, 59 (1st Cir. 2023).

48.     Even though the First Circuit recognized that the Zip Code Quota Plan was "chosen precisely to alter racial demographics," in its view, no amount of intent evidence could overcome the supposed lack of disparate impact. *Id*. at 63.

49.     The Coalition petitioned the Supreme Court for a writ of certiorari. On December 9, 2024, the Court denied the petition over the dissenting votes of Justices Alito and Thomas. In dissent, Justice Alito observed that "despite overwhelming direct evidence of intentional discrimination, the lower courts concluded that the Coalition's equal-protection claim failed because it did not show 'disparate impact.'" *Boston Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of the City of Boston*, 145 S. Ct. 15, 17 (2024) (mem.) (Alito, J., dissenting from denial of certiorari). In his view, "[t]his reasoning is indefensible twice over" and "the lower courts' disparate-impact analysis was clearly flawed." *Id.*

50.     Although he ultimately concurred in the Court's decision to deny the Coalition's petition, Justice Gorsuch indicated in a separate statement that he shared his colleague's "significant concerns about the First Circuit's analysis," concerns that "lower courts facing future similar cases would do well to consider." *Id*. at 15 (Gorsuch, J., concurring in denial of certiorari).

***The School Committee Develops the Tier System to Improve the Zip Code Quota Plan's Racial Balancing and Target White Applicants***

51.    In January 2021, the School Committee appointed a Task Force to devise a new admissions process that would result in a "student body [that] better reflects the **racial, socioeconomic, and geographic diversity** of all students (K-12) in the city of Boston."[6]

52.    The Task Force was charged by the School Committee to "build off" the work of the Working Group. The Working Group, of course, had recommended the Zip Code Quota Plan that a federal district court found was "chosen precisely because of [its] effect on racial demographics." *Boston Parent*, 2021 WL 4489840, at *15.

53.    The Task Force was composed of many of the same individuals who served on the Working Group responsible for the race-based Zip Code Quota Plan, including NAACP-Boston Branch president Tanisha Sullivan, who was the Task Force's co-chair. Other members of the Task Force appear to have been chosen for their credentials on race-related matters and their past criticism of Exam School admissions, including

- Matt Cregor, who authored an article entitled *A Broken Mirror: Exam School Admissions Fail to Reflect Boston's Diversity*;

- Dr. Roseann Tung, an independent researcher whose studies centered on critical theory and anti-racism;

- Zena Lum, the Senior Director of Diversity, Equity, and Inclusion at Lindauer Global;

---

[6] This quote comes from a presentation the Superintendent made to the School Committee on July 14, 2021. The presentation is available here: https://resources.finalsite.net/images/v1728690 213/bostonpublicschoolsorg/puzwopk13tdy6edxd6y2/schoolcommitteeexamschoolsadmissionsfi nalpptx.pdf (last visited July 14, 2025).

- Samuel Acevedo, BPS' Opportunity and Achievement Gap Task Force Co-Chair, who as a member of the Working Group said that one of its "imperatives" was "rectifying historic racial inequities afflicting Exam School admissions for generations."

54.    The Task Force was created and overseen by most of the same School Committee members who had approved the race-based Zip Code Quota Plan, with the exception of former Chairperson Loconto, who was forced to resign after mocking the surnames of Asian-American parents at an October 21, 2020, meeting.

55.    School Committee members Rivera and Oliver-Davila, who applauded former Chairperson Loconto's ridicule of Asian-American surnames three months before and texted each other about hating white residents of West Roxbury, oversaw the Task Force's work until June 2021, when their previously-concealed racist text messages were exposed by the Boston Globe and Rivera and Oliver-Davila were forced to resign.

56.    Also serving on the School Committee at this time was student representative Khymani James, who testified "I too hate white people," in a June 16, 2021, School Committee meeting.[7]

57.    Like the Working Group, the Task Force was consumed with racial balancing.

58.    During the May 18, 2021, Task Force meeting, members expressed concern about a legal challenge to whatever plan they approved. Referring to racial balancing, Task Force

---

[7] Boston City TV, *Boston School Committee Meeting 6-16-21 Part 1*, YouTube (June 16, 2021), at 2:30:30, https://www.youtube.com/watch?v=nuBJ45chVYI&ab_channel=BostonCityTV.

member Matt Cregor asked "can we even talk about what it is that we want to see?"[8] A member also claimed that the law permitted consideration of race where there are "unequal barriers."[9]

59.     At the June 4, 2021, Task Force meeting, several members were even more explicit in their discriminatory purpose. Members seemed to agree that the Zip Code Quota Plan increased "diversity and equity," but several were upset at the Plan's reservation of 20% of the seats for the City's highest scorers regardless of zip code, saying it protects privilege and preserves elitism.

60.     At this meeting, Task Force co-chair Tanisha Sullivan said that setting aside 20% of the seats for the top scorers had never given her "peace" as a supporter of equity and justice.[10] Another member quoted from Ibram X. Kendi and argued that tests "exclude black bodies," while another said "every indicator that we've discussed using can exacerbate inequity."

61.     On June 16, 2021, the Task Force presented five options for new admissions criteria to the School Committee.[11] The slide show noted that the goals of the new criteria include increasing "geographic, socioeconomic, and racial diversity," and that this would be accomplished through eligibility and invitation criteria.

62.     Among the options presented was to divide the City into "tiers" based on a number of socioeconomic factors and allocate seats from among these tiers. Some options included a 20%

---

[8] Boston City TV, *Boston School Committee Meeting 5-18-21*, YouTube (May 18, 2021), at 1:07:16, https://www.youtube.com/watch?v=x6J3RF8p3gY&t=1s&ab_channel=BostonCityTV.

[9] *Id.* at 1:11:37.

[10] Boston City TV, Exam School Admissions Task Force Meeting 6-4-21, YouTube (June 4, 2021), at 1:24:03, https://www.youtube.com/watch?v=dB57NAlvcE8&t=7s&ab_channel=BostonCityTV.

[11] The slide show is available here: https://resources.finalsite.net/images/v1728689979/bostonpublicschoolsorg/lmun3beepuc1s28bal0e/examschoolstaskforcepresentationtoschoolcommitteefinal.pdf (last visited July 14, 2025).

reservation for the highest scoring students Citywide, similar to the one that existed under the Zip Code Quota Plan.

63.     On June 30, 2021, the Task Force made its final recommendation to the School Committee. The recommendation was that 20% of the seats be allocated to the highest scoring students regardless of socioeconomic tier, while the remaining 80% be divided evenly among the highest scoring students in each tier. Each student's composite score would be based 70% on GPA and 30% on his or her score on the MAP Growth assessment. The composite score also included between zero and fifteen bonus points, depending on whether the applicant attended a high-poverty elementary school, was homeless, in the care of the Department of Children and Families, or lived in public housing.

64.     At this meeting, some members of the Task Force, including Dr. Tung, expressed the view that BPS must "eliminate structures that support white supremacy."[12]

65.     On July 14, 2021, then-Superintendent Brenda Cassellius presented her plan to the School Committee.[13] In direct response to modeling showing that 56% of the students admitted among those in the top 20% scorers Citywide would be white, the Superintendent removed the 20% reservation for the top scorers. The presentation stated her view that reserving seats for the top scorers "goes against our desire to be an equitable anti-racist district."

66.     At that meeting, the School Committee unanimously voted to approve the Superintendent's plan without the 20% reservation for top scorers.

67.     After approval, the Superintendent provided multiple implementation updates that reinforced the racial purpose of everyone involved.

---

[12] Boston City TV, Boston School Committee Meeting 6-30-21, YouTube (June 30, 2021), at 3:50:03, https://www.youtube.com/watch?v=DY3EpfD7a3Y&t=4s.

[13] This presentation is cited above in footnote 6.

68.     In October 2021, she stated: "We put this policy together because we knew ... not everybody had the same fair shot at the exam schools geographically, racially or by income."[14]

69.     In December 2021, she tried to assuage the concerns that particular schools that had typically sent large numbers of students to the Exam Schools were targeted for substantial reductions in Exam School seats, saying "I know that it's hard for the schools that have had a larger proportion typically and historically to see that proportional share go down" but emphasizing that "[i]t's important for us to see this policy through . . . to see if we can achieve our goals as an antiracist district."[15]

70.     At this time, Task Force member Dr. Tung added that "the very existence of exam schools has had intended consequences of maintaining power and privilege among white and more affluent families in Boston. ... The policy ... is a long overdue start to remedy those injustices."[16] The Superintendent and at least one School Committee member indicated their agreement.

### *The Tier System's Disproportionate Effect on White Applicants*

71.     The Tier System the School Committee enacted for the 2022-23 school year remains in force, though it has been tweaked over the past four application cycles and remains subject to further adjustments.

72.     As described in more detail below for the seventh-grade admissions process— which is the most common path to Exam School admission—tweaks have included reducing the number of tiers from eight to four and adjusting the number of bonus points certain applicants

---

[14] Boston City TV, Boston School Committee Meeting 10-6-21, YouTube (Oct. 6, 2021), at 5:00:27, https://www.youtube.com/watch?v=0VHfvdnqXVM&t=49s.

[15] Boston City TV, Boston School Committee Meeting 12-1-21, YouTube (Dec. 1, 2021), at 4:03:31, https://www.youtube.com/watch?v=2lKZAgSIfw8.

[16] *Id.* at 2:21:22.

receive, primarily from attending a sending school that qualifies as at least 40% economically disadvantaged.

73.    But the tweaks have not changed the manner in which the Tier System works as a racial proxy—which it does primarily by combining a large proportion of white students into one Tier (Tier 8 from 2022-23 through 2024-24 and Tier 4 in 2025-26 and beyond) and forcing them to compete only against one another for a finite number of seats.

74.    According to modeling presented by the Task Force, under a four-tier system, 48.1% of students in grades 5-8 in Tier 4 would be white, while none of the other tiers would be more than 13.5% white. Under an eight-tier system, modeling estimated that 64.2% of students in Tier 8 would be white, compared to 29.8% in Tier 7 and less than 10% in Tiers 1 through 5.[17]

75.    According to this modeling, a majority of white students in grades 5-8 would be classified as Tier 8 in an eight-tier system or as Tier 4 in a four-tier system.

76.    Because there is no reservation of seats for the top composite scorers citywide, applicants in each tier compete against only each other for roughly the same number of Exam School seats. The tier that contains most white applicants also has a substantially larger number of applicants than the others, so each individual applicant is competing against more students for the same number of seats.

77.    Bonus points have also existed as add-ons to an applicant's composite score. The most common bonus points are given for attending a sending school that is at least 40% economically disadvantaged.

---

[17] Boston Public Schools, Exam School Task Force Presentation (May 28, 2021), https://resources.finalsite.net/images/v1728701809/bostonpublicschoolsorg/oirpmkjjotamwpiknlrj/examschooltaskforcecensustracttieroptions2821.pdf.

78.     White students are disproportionately unlikely to receive bonus points, and are so disadvantaged even within the tiers with the most competition.

79.     The existence of bonus points masks even larger differences in the cutoff scores to attend the Exam Schools (and particularly BLS). Bonus points are added to the composite scores, so even the reported cutoffs do not tell the whole story of how difficult it is to obtain a seat at BLS from Tier 8 (2022-23 through 2024-25) and Tier 4 (2025-26 and beyond).

80.     Invitations are distributed across ten rounds with each tier selecting 10% of its allocated invitations in each round. Tier 1 proceeds first. In any individual round, BLS seats might run out before students in the highest tier are able to receive an invitation. This makes it even more difficult for the mostly white students in Tier 8 (2022-23 through 2024-25) and Tier 4 (2025-26 and beyond) to earn an invitation to BLS.

81.     The criteria used to determine which census tracts are assigned to each tier do not consider median income. Instead, there are five factors: percentage of persons below the poverty line, percentage of households occupied by the owner, percentage of families headed by a single parent, percentage of households where a language other than English is spoken, and educational attainment.

***2022-23 Cycle (Eight Tiers, Bonus Points)***

82.     In 2022-23, the first year of the Tier System, BPS did not employ the MAP Growth exam. Composite scores were based only on an applicant's GPA.

83.     The Tier System had an immediate effect. Nearly all applicants from Tiers 1 through 5 were admitted, but only 143 of the 320 applicants from Tier 8 received an invitation to *any* Exam School. Only 61 of those were admitted to BLS, the most desired of the three.[18]

84.     While cutoff scores from this first year are not available, the effect of the bonus points was already clear. Just 32% of Tier 8 students received the 10 bonus points available for attending a disadvantaged sending school. That compared to 63% of Tier 7 and over 70% of students in all the other tiers who received the bonus points.

85.     The share of applicants admitted to the Exam Schools who were white plummeted from 31% under the Zip Code Quota Plan (and it had been 40% before that) to 25% under the first year of the Tier System. At BLS, it was an even lower 23%.

86.     White applicants had the lowest exam school acceptance rate of any group. White students comprised the majority of the only tier to have an acceptance rate under 50%.

87.     For the first time, the share of white students admitted to the Exam Schools fell below the share of white students in the applicant pool: white applicants made up 32% of the applicant pool but received only 25% of Exam School invitations.[19]

### 2023-2024 (Eight Tiers, Bonus Points)

88.     In 2023-24, the second year of the Tier System, these effects persisted. The cutoffs for composite score needed to earn an invitation to BLS were shockingly large.

---

[18] Memo from Monica Hogan, Sr. Executive Director at Boston Public Schools to Dr. Brenda Cassellius, Superintendent, SY22-23 Exam School Invitation Summary (May 4, 2022), https://resources.finalsite.net/images/v1728685637/bostonpublicschoolsorg/oqe0bpxlz7cfhinsp4mr/Memo_-_SY22-23_Exam_School_Invitation_Summary.pdf.

[19] Data on the composition of the applicant pool was received in response to a public records request and is attached to the Complaint as Exhibit A.

89.    Applicants in Tier 8 needed a 99.1 composite score to receive an invitation to attend BLS, while the cutoff was below 90 for Tiers 1 through 5 and as low as 73.5 for Tier 3.[20]

90.    The cutoff score for Tier 7 (100.2) was slightly higher than that for Tier 8. The highest possible composite score without bonus points is 100. That the Tier 7 cutoff drifted above 100 meant that students in Tier 7—including Coalition member Kerry Akashian's child—could not get into BLS at all unless they received bonus points.

91.    The addition of bonus points masked how difficult it was for Tier 8 students to earn a seat at BLS compared to other students. Just 31% of Tier 8 applicants received the 10 bonus points for attending a disadvantaged sending school, compared to 65% of the applicant pool as a whole and even 64% of Tier 7 applicants.[21]

92.    Students in Tier 8 also needed much higher scores to gain admittance to the other two Exam Schools.

93.    Tier 8 students needed a 97.1 composite score to receive an invitation to attend O'Bryant, while students in Tiers 1 through 5 could get in with scores below 72.

94.    The cutoff score to receive an invitation to attend *any* Exam School for Tier 8 students was 97.1. However, that same student could have earned a seat at BLS with a score of 86.1 if he lived in Tiers 1-5, or 94.4 if he lived in Tier 6.

95.    All but one of the 125 applicants from Tier 1 received an invitation (and 59 of them received an invitation to BLS). All but three of the 131 applicants from Tier 2 received an

---

[20] Boston Public Schools, SY23-24 Minimum Composite Scores by Tier and School, https://drive.google.com/file/d/1lPghP5nIOIcIRVWdLDq4JYw2QLqz5uOB/view (last visited July 14, 2025).

[21] Memorandum from Apryl Clarkson, Sr. Executive Director at Boston Public Schools, to Mary Skipper, Superintendent, SY23-24 Exam School Invitation Summary (June 7, 2023), https://docs.google.com/document/d/1z9BA7sAx66q2OvCXix2e7lQ4LBAeYCDzRFQTRLbmQOQ/edit?tab=t.0.

invitation, and *every single one* of the 111 applicants from Tier 3 received an invitation to an Exam School. But in Tier 8, just 127 of the 270 applicants received an invitation to any of the schools (and just 72 to BLS).

96.     Tier 8 was the only Tier made up of mostly white students.

97.     White students had the lowest invitation rate to BLS and the Exam Schools as a whole.

98.     In this second year, the share of students invited to the Exam Schools who were white dropped even further, to 24%, remaining below the 29% share of the applicant pool which were white students.[22]

99.     Though BPS lumped in white applicants with students of "other" racial groups, the effect is clear. There were 249 black applicants in Tiers 1-6, of which 219 received an invitation. Only 51 black applicants came from Tiers 7 and 8. There were 286 Hispanic applicants from Tiers 1-6, of which 254 received an invitation. Only 80 Hispanic applicants came from Tiers 7 and 8. By contrast, there were 193 "other" applicants from Tier 8 alone, of which only 84 received an invitation to any Exam School. Only just over 100 "other" applicants came from Tiers 1-6, while another 85 came from Tier 7 (of which only 58 were admitted).[23]

***2024-2025 (Eight Tiers and Adjusted Bonus Points)***

100.     In 2024-25, the third year of the Tier System, BPS adjusted the bonus point system so that the number of points a student received for attending an economically disadvantaged sending school also varied by tier. BPS did this to avoid a situation like the previous year where students could not get into BLS from Tier 7 without earning bonus points.

---

[22] Data on the composition of the applicant pool by race is included in Exhibit A. Data on the share of invitees by race is in the document cited in the previous footnote.

[23] This data was received in response to a public records request and is attached as Exhibit B.

101.    Instead of each such student receiving 10 bonus points, eligible students in Tier 8 received only 2 points, while students in Tier 1 received 8, those in Tier 3 received 9, and those in Tier 2 received the full 10. Again, far fewer students in Tier 8 received these points (48%, compared to 70% of the applicant pool as a whole).[24]

102.    This did not improve the situation for students in Tier 8.

103.    The cutoff score to receive an invitation to attend BLS for Tier 8 students was 98.8, while it remained below 90 for students in Tiers 1 through 5—all of whom had a higher share of students receiving bonus points (and each bonus-eligible student in these tiers received more points).

104.    The cutoff score to receive an invitation to attend *any* Exam School for Tier 8 students was 96.5. Such a score would have earned a student from Tiers 1 through 5 an invitation to attend BLS.

105.    White students again had the lowest Exam School acceptance rate.

106.    Just 123 of the 270 applicants from Tier 8 received an invitation to any Exam School (and just 65 of them to BLS). Every other Tier had an invitation rate above 50%, while *every one* of the 115 students who applied from Tier 1 received an invitation (52 of them to BLS) and all but two of the 123 students who applied from Tier 3 were invited (57 of them to BLS).

---

[24] Memorandum from Apryl Clarkson, Sr. Executive Director at Boston Public Schools, to Mary Skipper, Superintendent, SY24-25 Exam School Invitation Summary (Dec. 2024), https://drive.google.com/file/d/17JvFW8gbfaAxkjoCB_chsRUWog72XTts/view; Boston Public Schools, SY 25-26 Exam School Invitation Summary, https://drive.google.com/file/d/1tP8p64bb0Hd7EEGJKr0Syoy9fN2MdqTG/view. (last visited July 14, 2025).

107.    Again in this third year of the Tier System, white students made up just 25% of those admitted to the Exam Schools, lower than the 29% of white students in the applicant pool.[25]

**2025-2026 (Four Tiers and Adjusted Bonus Points)**

108.    In 2025-26, the fourth year of the Tier System, BPS reduced the number of tiers from eight to four.

109.    Despite largely combining Tiers 7 and 8 to make Tier 4, the difference in cutoff scores remained substantial.

110.    Tier 4 students needed a 97.4 composite score to receive an invitation to BLS, while Tier 1 students needed only a 92.8. The cutoff differences were also substantial at the other Exam Schools: for an invitation to BLA, Tier 4 students needed a composite score of 91.1 while Tier 1 students needed just an 82.8. The cutoffs were 93.2 and 82.7, respectively, for O'Bryant.[26]

111.    The bonus point system continued to conceal the difference in composite scores required to receive an invitation to each Exam School—92% of students in Tier 1 received bonus points compared to just 58% of Tier 4 students. And when Tier 4 students received bonus points, they received only 3, while Tier 1 applicants who qualified received the full 10 bonus points.

112.    Like Tier 8 before it, Tier 4 had the most applicants. Tier 4 had 414 applicants to the Exam Schools compared to 377 in Tier 3, 382 in Tier 2, and just 317 in Tier 1. But each of the four tiers received the same number of invitations to the Exam Schools—245.

---

[25] The share of invitees who were white is in the document cited in the previous footnote. For the applicant pool data, *see* Boston Public Schools, Exam School Admission Policy Review (June 17, 2025), https://resources.finalsite.net/images/v1750197966/bostonpublicschoolsorg/jleiahqg3tggwjuomsn6/FINALExamSchoolsSCUpdatePPT-61725.pdf.

[26] Boston    Public    Schools,    SY 25-26    Exam    School    Invitation    Summary, https://drive.google.com/file/d/1tP8p64bb0Hd7EEGJKr0Syoy9fN2MdqTG/view    (last    visited July 14, 2025).

113.    Because each Tier received the same number of Exam School seats, but Tier 4 had more applicants, the acceptance rate for students in Tier 4 was substantially lower than for applicants from the other tiers.

114.    White students made up 30% of those admitted to the Exam Schools in this fourth year of the Tier System, which slightly outstripped the share of white applicants in the applicant pool.

115.    BPS modeling predicted that had there been four tiers in 2024-25, white students would have made up 27% those invited to attend the Exam Schools, lower than the 29% share of the applicant pool that year that was white.[27]

### Future Operation of the Tier System

116.    As the tweaks to the Tier System since its enactment demonstrate, the School Committee, Superintendent, and BPS officials retain control over the admissions process and are constantly adjusting it.

117.    Though tiers and bonus points are a constant feature of the Tier System, the tiers themselves are subject to change and thus the particular racial result of the gerrymandered system will vary from year to year.

118.    BPS has succeeded in limiting the admission of white students to the Exam Schools to a share lower than their share of the applicant pool for three of the last four years. In all four years, white students have been overwhelmingly confined to the tier with the lowest Exam School acceptance rate.

---

[27] This modeling appears in the presentation cited in footnote 25.

119.    As long as the Tier System operates this way, white students will have to compete mostly against each other in the same tier, requiring higher composite scores to earn an invitation to the Exam Schools—particularly BLS.

120.    Unless BLS abandons the Tier System and returns to a Citywide merit-based admissions process, the children of Coalition members will be forced to compete in a system that acts as a proxy against the admission of white students to the Exam Schools.

### CAUSE OF ACTION

### Violation of the Equal Protection Clause of the
### Fourteenth Amendment, through 42 U.S.C. § 1983

121.    The Coalition alleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

122.    The Fourteenth Amendment to the United States Constitution provides in relevant part: "No State shall make or enforce any law which shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

123.    42 U.S.C. § 1983 provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

124.    Defendant School Committee is a "person" within the meaning of 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 (1978).

125.    Defendant Skipper, sued in her official capacity for declaratory and injunctive relief, is a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

126.    Defendants have acted and are acting "under color of state law" within the meaning of 42 U.S.C. § 1983.

127.    A facially neutral state action violates the Fourteenth Amendment's Equal Protection Clause when it is enacted with a racially discriminatory purpose. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). A racially discriminatory purpose does not require a showing that race was the predominant consideration of the decisionmakers, *id.* at 265, but only that the decisionmakers acted "at least in part 'because of,' not merely 'in spite of,' [the challenged policy's] adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

128.    The actions and statements of members of the School Committee, the Superintendent, the Task Force, and BPS as a whole demonstrate that Defendants intentionally implemented, and continue to administer, the Tier System for the purpose of limiting the proportion of white students who may enroll at the Exam Schools.

129.    By implementing the Tier System, Defendants have been successful at reducing the number of white students accepted to the Exam Schools. In each year since the Tier System has been in effect, white students have made up a smaller share of Exam School invitees than they did under the Zip Code Quota Plan. In three of the four years, white students have been admitted at rates below the share of white students in the applicant pool, which demonstrates disparate impact against white applicants even under the First Circuit's decision in *Boston Parent*, 89 F.4th at 59.

130.    Although the Tier System is facially race-neutral, it was enacted with the purpose to discriminate against white applicants to the Exam Schools. Therefore, it is subject to strict scrutiny, and cannot stand unless Defendants identify a compelling government interest and show the Tier System is narrowly tailored to achieve it. *Miller v. Johnson*, 515 U.S. 900, 913 (1995).

131.    After the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023), the only remaining government interest sufficient to justify racial discrimination is to remedy the government's own past discrimination.

132.    Since BPS was declared a unitary district in 1987, it cannot assert this interest to defend the Tier System. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720-21 (2007). Therefore, Defendants do not have a compelling governmental interest that justifies racially discriminatory action toward white students, including children of Coalition members.

133.    The Tier System is not narrowly tailored to further any compelling governmental interest.

134.    Because the Tier System was implemented for a racially discriminatory purpose and furthers no compelling government interest, it violates the Equal Protection Clause.

135.    The Coalition and its members have been and will continue to be harmed by the Tier System.

136.    The Coalition is entitled to injunctive and declaratory relief enjoining Defendants from continuing to use the Tier System or otherwise utilizing race or ethnicity in admissions to the Exam Schools.

137.    The Coalition is also entitled to injunctive relief ordering the admission of its members who were denied an invitation to the Exam Schools as a whole or to their school of choice due to the Tier System between 2023-24 and 2025-26.

**PRAYER FOR RELIEF**

WHEREFORE, the Coalition respectfully requests that the Court:

1.      Declare Defendants' Tier System unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, through 42 U.S.C. § 1983;

2.      Permanently enjoin Defendants from operating the Tier System or otherwise utilizing race or ethnicity in admissions to the Exam Schools;

3.      Order Defendants to admit to their Exam School of choice the children of the Coalition members named in this Complaint—and any others that may be named later—who were denied a seat at their Exam School of choice under the Tier System between the 2023-24 and 2025-26 admissions cycles;

4.      Issue an award of attorneys' fees and costs in this action pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988; and

5.      Provide such other and further relief as the Court deems just and proper.

DATED: July 17, 2025.

Respectfully submitted,

/s/ Jonathan Houghton

CHRISTOPHER M. KIESER*          JONATHAN HOUGHTON
Cal. Bar No. 298486                      Mass. Bar No. 641688
ERIN E. WILCOX*                          Pacific Legal Foundation
Cal. Bar No. 337427                      3100 Clarendon Blvd., Suite 1000
Pacific Legal Foundation                 Arlington, VA 22201
555 Capitol Mall, Suite 1290             (202) 888-6881
Sacramento, California 95814             jhoughton@pacificlegal.org
(916) 419-7111
ckieser@pacificlegal.org
ewilcox@pacificlegal.org

GLENN E. ROPER*
Colo. Bar No. 38723
Pacific Legal Foundation
1745 Shea Center Drive, Suite 400
Highlands Ranch, Colorado 80129
(916) 503-9045                           *Pro Hac Vice Pending
geroper@pacificlegal.org

*Attorneys for Plaintiff*