**EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON PARENT COALITION FOR ACADEMIC EXCELLENCE CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOSTON SCHOOL COMMITTEE and MARY SKIPPER, in her official capacity as Superintendent of the Boston Public Schools, <br><br> Defendants. | Civil Action No. 1:25-cv-12015-WGY |

### [PROPOSED] REPLY TO OPPOSITION TO MOTION TO DISMISS

Defendants Boston School Committee and Mary Skipper, Superintendent of Boston Public Schools (collectively "BPS"), hereby briefly reply to matters raised by Plaintiff Boston Parent Coalition for Academic Excellence Corp. ("Coalition") in its Opposition. Based entirely on conclusory allegations, unfounded assumptions, and a continuing desire to overlook both the race-neutral nature of the socioeconomic tier-based Exam School admissions plan and the longstanding law applicable to such policies, the Coalition's arguments against dismissal fail. In short, despite all its rhetoric, the Coalition continues to fail to meet the elements required to state a viable Equal Protection claim, which, in this context, includes allegations that the plan has a disparate impact against the plaintiffs relative to other groups. *See Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for City of Bos.*, 89 F.4th 46, 57 (1st Cir. 2023), *cert. denied*, 145 S. Ct. 15 (2024). It is not sufficient for the Coalition to merely allege that, even though the white students were relatively advantaged under the chosen policy, there was another policy that

might have advantaged them even more. The rule for which the Coalition advocates is one that would lock in perpetually some groups' historical advantages. This is not what the law compels.

I.      **The Coalition Has Failed To Allege Cognizable Disparate Impact.**

    A.      **The Proper Comparator Is Eligible School-Age Population.**

The First Circuit has ruled that the measure of disparate impact in the context of a facially-neutral Exam School admissions policy is a comparison of "the eligible school-age population" with "successful applicants." *Bos. Parent Coal.*, 89 F.4th at 59. The Coalition nevertheless insists that the proper comparator should be those that actually applied, citing *Coalition for TJ v. Fairfax County School Board*, 68 F.4th 864 (4th Cir. 2023). That the First Circuit has explicitly stated otherwise should end the inquiry.

Yet, the Coalition's argument fails for other reasons. Most basically, school-age population accords with the Equal Protection Clause's concern for broad representational fairness, not the demographics of voluntary applicant groups. *See, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 201-08 (2023) (examining the Equal Protection Clause's origins, purposes and broad sweep); *Wessmann v. Gittens*, 160 F.3d 790, 794 (1st Cir. 1998) ("equal protection guarantee[s] that citizens will be treated as individuals, not as simply components of a racial, religious, sexual or national class" (quoting *Miller v. Johnson,* 515 U.S. 900, 911 (1995) (internal citations and punctuation omitted)). Quite simply, all incoming seventh grade Boston students (at least those with a B average or better) are eligible to apply for the Exam Schools; that only some choose – or have the knowledge and wherewithal – to do so does not change the constitutional baseline.

Indeed, the Coalition's reliance on applicant pool not only exacerbates the overrepresentation of white students already baked into the historical disparities, it ignores the

broader context of public education, in particular BPS's obligation to provide educational opportunities to *all* children in Boston, regardless of socioeconomic circumstances and geographic location. On its face, the plan at issue reflects the socioeconomic diversity of Boston's school-age population. It was not designed to mirror the demographics of a self-selecting applicant pool. Competitive admissions do not exempt public schools from their constitutional obligation to ensure that educational opportunities are available to all students equitably. Far from a "passing reference to school-age population" (Opp. at 12) the First Circuit's reliance on eligible school-age population in *Boston Parent II* was deliberate and is controlling here.

### B. The Alleged Disparities Are Neither Stark Nor Significant As Required For A Viable Equal Protection Claim.

The Coalition has no legitimate answer for the fact that their Complaint's allegations – even were the applicant pool the correct comparator – simply show that white students' admissions rates were in all years substantially similar to their rates of application. Indeed, the Coalition's arguments about "acceptance rates," "cut-off scores" and "share of admitted students" (*see* Opp. at 11-12), all boil down to the same thing – its claim that white students have the lowest rate of application to acceptance.

However labelled, this conclusion rests solely on fluctuations in white student acceptance rates that are all within close proximity to application rates. These differences are too variable and too small to support a stark pattern of statistically significant disparity necessary for any inference of disparate racial impact. *See, e.g., Anderson v. Boston*, 375 F.3d 71, 89-90 (1st Cir. 2004); *Jones v. City of Boston*, 752 F.3d 38, 50 (1st Cir. 2014); *see also Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365, 372–75 (2016) (explaining that although the legislatively mandated Top Ten Percent Plan had the "largest impact" on petitioner's chances of admission and affected

3

racial composition, it remained a facially, non-discriminatory neutral baseline). The Coalition's conclusory allegations – including its unsupported pronouncement that it need not even plead any fact showing a statistically significant disparity (*see* Opp. at 14) – do not transform anecdotal variations into constitutional injury.

II. **The Coalition Has Failed To Allege Cognizable Discriminatory Intent.**

　　A. **The Coalition's Reliance On Alleged "Historical Background" – Past Plans Of Different School Committees – Does Not Support A Plausible Inference Of *This* School Committee's Discriminatory Intent.**

In support of its claim of race-based intent, the Coalition relies primarily on history – past Exam School admissions plans, past statements, past BPS cases – which it claims all show BPS's discriminatory intent in adopting the socioeconomic tier plan at issue. *See* Opp. at 16-18. Just how the Coalition can impute alleged historical motives and acts of others to the current School Committee members who actually adopted the socioeconomic tier-based plan is nowhere explained and, indeed, has no basis in the law. *See Abbott v. Perez,* 585 U.S. 579, 603 (2018) ("Past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful.")

The Coalition particularly relies on the alleged animus of since-resigned School Committee members in adopting a completely different policy – the 2020 zip code-based plan – years before the socioeconomic plan. Yet, as this Court recognized, even if three of the seven School Committee members harbored some form of racial animus, that fact would not itself support the conclusion that the School Committee's adoption of the zip code plan was the result of discriminatory animus. *See Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for City of Bos.*, No. CV 21-10330-WGY, 2021 WL 4489840, at *15 (D. Mass. Oct. 1, 2021). It is even less relevant to the lawfulness of a *different* plan adopted by a *differently constituted* School Committee. The Coalition's bald claim that a majority of different School Committee members

4

had similar discriminatory intent in adopting a different socioeconomic-based plan is without basis.

With respect to those BPS officials actually involved in implementing the admissions plan at issue, the Coalition resorts to alleged isolated remarks invoking terms such as "antiracism," "equity" and "white supremacy." *See* Opp. at 17-18. Suffice to say, such terms reflect common policy vocabulary, and in no way support an inference of racial hostility. *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 548, 554 (3d Cir. 2011) ("Board and Administrator references to 'diversity' do not imply a discriminatory purpose" and "mere awareness or consideration of race should not be mistaken for racially discriminatory intent or for proof of an equal protection violation.").

Regardless, even were such statements indicative of race-based goals, "[t]here is nothing constitutionally impermissible about a school district including racial diversity as a consideration and goal in the enactment of a facially neutral plan." *Bos. Parent Coal.*, 89 F.4th at 62 (internal punctuation and citation omitted). At bottom, when the governmental action is facially race neutral, "good faith [is] presumed in the absence of a showing to the contrary…." *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 318-19 (1978) (citing *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977); *Washington v. Davis*, 426 U.S. 229 (1976); and *Swain v. Alabama*, 380 U.S. 202 (1965)). Indeed, any contrary rule would perversely incentivize public bodies to reduce candor and transparency in policymaking so as to avoid equal protection challenges.

### B.     The Courts Have Rejected The Coalition's "Zero-Sum" Theory Of Intent.

The Coalition argues that because competitive admissions are "zero-sum," any effort to aid one group necessarily harms another, which is all it needs to establish animus. *See* Opp. at

18-20. As the Coalition concedes, the Fourth Circuit – the highest court most directly addressing this issue – expressly rejected that reasoning, explaining that a race-neutral change in admissions criteria that increases diversity without explicit racial classification does not constitute discriminatory intent. *Coalition for TJ*, 68 F.4th at 885-86; s*ee also, Fisher*, 579 U.S. at 385-86 (describing the Top Ten Percent Plan as a facially-neutral, legislatively-mandated rule that affected racial composition as lawful).

And despite the Coalition's best efforts to shoe-horn it into this case, the Supreme Court's decision in *Students for Fair Admissions, Inc.,* 600 U.S. 181, does not alter that conclusion. Of course, that case addresses explicit racial classifications in the context of private college education, *not* race-neutral categorizations like socioeconomic tiers in public school education. Indeed, in the zip code case, the First Circuit fully analyzed just why it is that *Students for Fair Admissions, Inc*. in no way precludes a race-neutral plan like the one at issue, thoroughly analyzing that decision and stating "we find no reason to conclude that *Students for Fair Admissions* changed the law governing the constitutionality of facially neutral, valid secondary education admissions policies under equal protection principles." *Bos. Parent Coal.*, 89 F.4th at 61.

### III.  The Coalition's Arguments Would Invalidate All Reforms That Seek To Ensure Equity Of Opportunity.

Finally, if accepted, the Coalition's tortured interpretation of Equal Protection would render any effort to address disparities in public education constitutionally suspect. This would not only chill legitimate policymaking, but wholly undermine the autonomy of local school boards. The Equal Protection Clause does not prohibit policies that seek to expand opportunity – it prohibits intentional discrimination. The socioeconomic tier plan at issue comes nowhere close to, never mind crossing, that constitutional bright line.

**Conclusion**

For all of the foregoing reasons, as well as those outlined in its moving papers, BPS respectfully request that this Honorable Court dismiss the Coalition's Complaint in its entirety.

>Respectfully submitted,
>
>BOSTON SCHOOL COMMITTEE and MARY SKIPPER, Superintendent of Boston Public Schools,
>
>By their attorneys,
>
>/s/ *Kay H. Hodge*
>Kay H. Hodge (BBO # 236560)
>    khodge@scmllp.com
>John M. Simon (BBO #645557)
>    jsimon@scmllp.com
>Loris N. Dennis (BBO #716709)
>    ldennis@scmllp.com
>Stoneman, Chandler & Miller LLP
>99 High Street
>Boston, MA 02110
>(617) 542-6789

Dated: November 25, 2025

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent by first class mail, postage prepaid, to those indicated as nonregistered participants on November 25, 2025.

>/s/ *Loris N. Dennis*
>Loris N. Dennis