UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON PARENT COALITION FOR ACADEMIC EXCELLENCE CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOSTON SCHOOL COMMITTEE and MARY SKIPPER, in her official capacity as Superintendent of the Boston Public Schools, <br><br> Defendants. | Civil Action No. 1:25-cv-12015-WGY |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY NAACP NEW ENGLAND AREA CONFERENCE AND NAACP BOSTON BRANCH FOR LEAVE TO INTERVENE AS DEFENDANTS**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1
PROPOSED INTERVENORS ...............................................................................................3
BACKGROUND .....................................................................................................................4
ARGUMENT............................................................................................................................8
    **I.**    Proposed Intervenors Are Entitled as of Right to Intervene in This Action. ...........8
        **A.**    The Motion for Leave to Intervene is Timely..............................................8
        **B.**    Proposed Intervenors Have Important Interests in this Action. ...................9
        **C.**    Proposed Intervenors' Interests Will Be Impaired Absent Intervention....11
        **D.**    Existing Parties Do Not Adequately Represent Proposed Intervenors' Interests. ....................................................................................................11
    **II.**   In the Alternative, the Court Should Exercise its Discretion to Grant Permissive Intervention. ............................................................................................................13
CONCLUSION.......................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of the City of Boston*,
  No. 121-10330-WGY, 2021 WL 4489840 (D. Mass Oct. 1, 2021), *aff'd.,* 89
  F.4th 46 (1st Cir. 2020), *cert. denied*, 145 S. Ct. 15 (2024) ...........................................1, 2, 4, 7

*Cotter v. Mass. Ass'n of Minority Law Enf't Officers*,
  219 F.3d 31 (1st Cir. 2000)....................................................................................................12

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.*,
  172 F.3d 104 (1st Cir. 1999)..............................................................................................11, 13

*Maine v. Dir., U.S. Fish & Wildlife Serv.*,
  262 F.3d 13 (1st Cir. 2001)................................................................................................11, 12

*Mass. v. U.S. Dep't. of Health & Human Servs.*,
  289 F. Supp.3d 259 (D. Mass. 2018) ....................................................................................13

*Mullane v. Portfolio Media, Inc.*,
  No. 19-11496-PBS, 2020 WL 1931525 (D. Mass. Feb. 28, 2020).......................................8, 9

*Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*,
  120 F.3d 304 (1st Cir. 1997)....................................................................................................8

*In re Thompson*,
  965 F.2d 1136 (1st Cir. 1992)................................................................................................13

**Other Authorities**

Bianca Vázquez Toness, *Boston Public School Students May Be at a
  Disadvantage for Getting Into Boston Latin*, WGBH (Sept. 5, 2017),
  https://www.wgbh.org/news/2017/09/05/local-news/boston-public-school-
  students-may-be-disadvantage-getting-boston-latin ................................................................6

*Branch History*, NAACP Boston Branch, https://www.naacpboston.com/history .........................3

Dr. Kelly Morris Roberts, *The Case for Balance: Socioeconomic Diversity and Its
  Impact on Schooling*, AASA Journal of Scholarship and Practice, Vol. 15, No.
  4, 25, 2019...............................................................................................................................10

Education, *Latino Education in the Time of COVID: The Pandemic's Unique
  Impact on Latino Students and Families in Massachusetts* (Aug. 2020),
  https://www.latinosforeducation.org/massachusetts-covid-19-impact/ ...................................6

Federal Rule of Civil Procedure 24 ...............................................................................3, 8, 13, 15

*Getting Into Boston Latin*, WGBH (Sept. 5, 2017), https://www.wgbh.org/news/2017/09/05/local-news/boston-public-school-students-may-be-disadvantage-getting-boston-latin ................................................................. 6

*Kid's Today – A Report from Boston Indicators*, Boston's Declining Child Population and Its Effect on School Enrollment, Jan. 2020 ....................................................... 5

Molly Clever and Karen S. Miller, *"I Understand What They're Going through": How Socioeconomic Background Shapes the Student Service-learning Experience*, the American Sociological Association, Vo. 47(3), 205, 2019 ............................ 10

*Our Purpose*, NAACP Boston Branch, https://www.naacpboston.com/who-we-are ................................................................................................................................. 3

Stephanie Ebbert, *At Boston Latin, Little Outreach to City's Black, Latino Students*, Boston Globe (Apr. 23, 2016), https://www.bostonglobe.com/metro/2016/04/23/boston-latin-little-outreach-city-black-latino-students/of6NlYrJhR8PvxMUYNi50L/story.html. ....................................... 5

**INTRODUCTION**

After unsuccessfully challenging a prior, temporary admissions plan ("Interim Covid Plan") imposed by the Boston Public Schools ("BPS"), Plaintiff Boston Parent Coalition for Academic Excellence Corporation ("Plaintiff") has filed another lawsuit challenging the constitutionality of an admissions plan for BPS's highly selective schools, the Boston Latin School ("BLS"), Boston Latin Academy ("BLA"), and the John D. O'Bryant School of Mathematics and Science (the "O'Bryant") (collectively, "highly selective schools") – a plan that is entirely race neutral, serving to increase socioeconomic diversity and accessibility for lower income students ("Current Plan"). This plan, as developed, takes a small step towards remediating longstanding inequities in the admissions process that have consistently and unfairly disadvantaged families from lower socioeconomic backgrounds for decades.

The National Association for the Advancement of Colored People ("NAACP") New England Area Conference ("NEAC") and the NAACP Boston Branch (collectively, "Proposed Intervenors"), now seek to intervene. NAACP NEAC and the NAACP Boston Branch have led the charge to ensure that BPS fully dismantles discriminatory admissions policies that adversely impact diverse students in Boston and to ensure that individuals from varying socioeconomic backgrounds have access to BPS's highly selective schools. Both organizations serve individuals from various races, religions, geographic backgrounds, and, crucially here, socioeconomic backgrounds and have constituents awaiting decisions from the highly selective schools. Moreover, the NAACP Boston Branch successfully intervened in Plaintiff's prior attempt to challenge BPS's Interim Covid Plan–which was found to be Constitutional by the District Court of Massachusetts and the First Circuit Court of Appeals.[1] *See Bos. Parent Coal. for Acad.*

---

[1] The Supreme Court also denied a *writ of certiorari* seeking review of the First Circuit's decision. *Bos. Parent Coal. for Academic Excellence Corp. v. Sch. Comm.*, 145 S. Ct. 15 (2024).

1

*Excellence Corp. v. Sch. Comm. of the City of Boston*, No. 121-10330-WGY, 2021 WL 4489840 (D. Mass Oct. 1, 2021)("The proposed intervenors are granted permissive intervention at this time."), *aff'd,* 89 F.4th 46 (1st Cir. 2020), *cert. denied*, 145 S. Ct. 15 (2024).

No existing party will adequately protect Proposed Intervenors' interests in this case, necessitating intervention. Intervention by the Proposed Intervenors would bring necessary factual and legal perspectives to this litigation that will otherwise be missing. Intervention by the Proposed Intervenors is necessary to protect their and their members' interests and to provide this Court with important factual and legal context that would otherwise be absent from this litigation. Proposed Intervenors support the Interim Covid Plan and the Current Plan which serve to provide equitable access to educational opportunities within BPS to all students, including socioeconomically diverse students. To effectively determine the constitutionality of the challenged Current Plan and the alleged intent, the Court must examine the *full* development and implications of the Current Plan, which Proposed Intervenors can provide. Plaintiff seeks to invalidate an admissions process that is, on its face, incontestable. Proposed Intervenors seek to demonstrate that the contested admissions plan is a critical step to ensuring that BPS's process for admitting students into its highly selective schools allows for equitable access to all students. Plaintiff would never take that position, and Defendants' interests are aligned with maintaining the *status quo* and are highly unlikely to admit previous exclusionary acts to students of varying socioeconomic backgrounds.

Moreover, Plaintiff's Complaint invokes statements allegedly made by Tanisha Sullivan ("Sullivan"), the former President of the NAACP Boston Branch and current President of the NAACP NEAC, who helped develop the Covid Plan and the Current Plan in her capacity as President of the NAACP Boston Branch. Proposed Intervenors are uniquely situated to provide helpful context and to correct the record as it relates to any statements *actually* made by Sullivan.

Proposed Intervenors meet all the criteria under Federal Rule of Civil Procedure 24 for both intervention as of right and permissive intervention. Specifically, as further discussed below, as it relates to Proposed Intervenors' request to intervene as of right, (1) the motion for leave to intervene is timely; (2) the Proposed Intervenors have important interests in this Action; (3) Proposed Intervenors' interest would be impaired without intervention; and (4) existing parties do not adequately represent Proposed Intervenors' interests. Additionally, Proposed Intervenors meet all the criteria for permissive intervention: (1) the proposed defenses are woven with the main action; (2) the current parties do not currently represent Proposed Intervenors' interest; (3) and there would be no prejudice to any party. Accordingly, the Motion should be granted.

## **PROPOSED INTERVENORS**

**NAACP New England Area Conference**, a key stakeholder in this matter, is the broader, umbrella organization under which the NAACP Boston Branch operates. NAACP NEAC serves Massachusetts, Rhode Island, Vermont, New Hampshire, and Maine. The NAACP NEAC serves as the grassroots volunteer base of the NAACP within these states. NAACP NEAC has been and continues to be fully supportive of the NAACP Boston Branch's efforts to alleviate acts of prior discrimination and exclusion against certain of its member constituents. Sullivan currently serves as the President of NAACP NEAC. NAACP NEAC is seeking to intervene for the following reason: to ensure that BPS's Current Plan, which has the ability to decrease long standing discriminatory and exclusive practices against certain organizational members and segments, is upheld as Constitutional.

**NAACP Boston Branch,** another key stakeholder in this matter, is recognized as the first chartered branch of the National NAACP organization.[2] The NAACP Boston Branch focuses,

---

[2] *Branch History*, NAACP Boston Branch, https://www.naacpboston.com/history.

*inter alia*, on protecting the political, educational, social, and economic equality and rights of all persons in the City of Boston.[3] The NAACP Boston Branch a long history of opposing BPS's discriminatory and exclusionary admissions policies and is continuing to press for change.[4] The NAACP Boston Branch is seeking to intervene to ensure that BPS's admissions plan, which serves to decrease decades-long discrimination and exclusion of low socioeconomic households, is allowed to continue and to provide critical firsthand knowledge regarding the development of both the Interim Covid Plan and the Current Plan.

## **BACKGROUND**

This matter comes off the heels of Plaintiff's significant defeat in a similar lawsuit challenging the constitutionality of the Interim Covid Plan filed by the same Plaintiff against the BPS, ultimately upheld by the First Circuit (and *writ of certiorari* denied by the United States Supreme Court). *See Sch. Comm. of the City of Bos.*, 2021 WL 4489840; *Sch. Comm. of the City of Bos.*, F.4th at 63; *Sch. Comm. of the City of Bos.*, 145 S. Ct. 15. The Interim Covid Plan was a zip-code based admissions plan, which ensured that applicants from varying geographic zip codes, including zip codes with lower average family income levels, were represented in the BPS's highly selective schools. The Interim Covid Plan was found to be constitutional, *id.*, but was always meant to be a temporary plan enacted during the COVID-19 pandemic sought to address challenges specific to the pandemic.

The Current Plan, enacted subsequent to the Interim Covid Plan, was developed to ensure socioeconomic diversity in Boston's highly selective schools and to allow for equal access and opportunity to *all* students, including applicants from lower socioeconomic backgrounds. As developed, students are assigned to one of eight socioeconomic tiers. Invitations to the highly

---

[3] *Our Purpose*, NAACP Boston Branch, https://www.naacpboston.com/who-we-are.
[4] *Id.*

selective schools is then divided evenly amongst the highest-scoring students within each socioeconomic tier. Students' applications to BPS's highly selective schools are based on GPA and academic metrics, and students then are potentially awarded additional points if certain life experiences are applicable, such as homelessness, attending a high-poverty elementary school, being in the care of the Department of Children and Families, or living in public housing.[5] The Current Plan is entirely race neutral–as intended from its inception. For instance, a student of a certain race with the same life experience would be given the same number of points and consideration as a student of a different race with a similar life experience, holding all other aspects of their application constant.

Both the Interim Covid Plan and the Current Plan were created within the context of BPS's long history of failing to create equitable access to its most selective schools. A report from *Boston Indicators*, released in January 2020, stated that "it is sobering that Boston's public schools are becoming less racially *and socioeconomically* integrated."[6] This research also found "Boston children are also more likely to attend schools that have become far less integrated in recent decades, both racially *and socioeconomically*."[7] Prior to the implementation of the Interim Covid Plan and the Current Plan, BPS continuously ignored the lack of socioeconomic diversity in its elite schools. BPS previously relied on GPA and the Independent School Entrance Exam ("ISEE") entirely in its admissions process. Prior to these admissions plans, affluent students have been vastly overrepresented in Boston's selective public schools, leaving socioeconomically diverse

---

[5] The Current Plan is explained more in depth in BPS's Memorandum of Law in Support of Motion to Dismiss. *See* Dkt. No. 20.
[6] *Kid's Today – A Report from Boston Indicators*, Boston's Declining Child Population and Its Effect on School Enrollment, Jan. 2020 (emphasis added)
[7] *Id.* (emphasis added)

5

students largely excluded.[8] The Current Plan is a necessary measure in an attempt to eradicate BPS's historical practices of excluding socioeconomically diverse children and allowing these children equitable access to a seat at the table – indeed, a transformative life opportunity.

The research is clear that socioeconomic diversity benefits all students and the school district at large. "The benefits to schools integrated by race of socioeconomic status extend beyond improved academic achievement in K-12 grades: Students who attend integrated schools are more likely to graduate from high school, to enroll in college and to complete a postsecondary degree."[9] "Students' experiences in classrooms where they learn alongside peers from different backgrounds and with different perspectives tend to promote critical thinking and problem-solving skills as well as creativity and motivation."[10]

For a wide variety of reasons, including BPS's previous reliance on outdated testing and admissions methodologies that inherently favor affluent students with greater resources, BPS has not allowed its highly selective schools to become socioeconomically diverse. Methods for grading and calculating GPAs differ greatly between and among the public, charter, interdistrict, parochial, and private schools that highly selective schools applicants attend. Nevertheless, BPS historically continued to resist engaging with the reality of grade inflation in parochial and private schools, which enrolled a disproportionate number of students in high-income areas.[11] For example, in 2016, 69% of the students applying to Boston Latin School from Holy Name Parish School in West Roxbury had A+ averages, and 10% of Boston Latin School's entering class came from Holy

---

[8] Stephanie Ebbert, *At Boston Latin, Little Outreach to City's Black, Latino Students*, Boston Globe (Apr. 23, 2016), https://www.bostonglobe.com/metro/2016/04/23/boston-latin-little-outreach-city-black-latino-students/of6NlYrJhR8PvxMUYNi50L/story.html.
[9] *Supra* note 6.
[10] *Id.*
[11] *See* Latinos for Education, *Latino Education in the Time of COVID: The Pandemic's Unique Impact on Latino Students and Families in Massachusetts* (Aug. 2020), https://www.latinosforeducation.org/massachusetts-covid-19-impact/.

Name alone.[12] By contrast, only 22% of students applying from BPS had those grades. Indeed, BPS students are only awarded the highest possible grade if they are deemed to be performing at a full grade level ahead of their current year.[13]

Both the NAACP NEAC and NAACP Boston Branch have long supported attempts to rectify these historical problems and ensure BPS's highly selective schools reap the benefits of diverse socioeconomic classes. It is with this backdrop that Sullivan, acting on behalf of the NAACP Boston Branch, enthusiastically joined BPS's Task Force charged with developing the Interim Covid Plan and was an instrumental voice in the development of the Current Plan.

The Plaintiff attempts to portray the Current Plan as racially motivated, while completely ignoring that the plan is, on its face and in execution, plainly race neutral. The Complaint incorrectly posits that task force members harbored racial animus in the construction of the Current Plan entirely based on alleged actions and conversations that purportedly pre-existed the formation of the Task Force. Dkt. No. 1 at paragraphs 51–70. These assertions ignore prior decisions from both this Court and the First Circuit, concluding that racial animus did not play a causal role in the construction of the Interim Covid Plan. *See Sch. Comm. of the City of Boston*, , 2021 WL 4489840; *Sch. Comm. of the City of Boston*, 89 F.4th at 63 ("[T]he district court supportably found as fact that the added element of animus played no causal role that was not fully and sufficiently played by the motive of reducing the under-representation of Black and Latinx students."). Plaintiff offers no new facts regarding the Task Force, or its members, separate and apart from what this Court and the First Circuit considered previously. Nevertheless, the alleged statements made by the Task

---

[12] Bianca Vázquez Toness, *Boston Public School Students May Be at a Disadvantage for Getting Into Boston Latin*, WGBH (Sept. 5, 2017), https://www.wgbh.org/news/2017/09/05/local-news/boston-public-school-students-may-be-disadvantage-getting-boston-latin.
[13] *Id*.

7

Force, including Sullivan's alleged statements regarding the Interim Covid Plan and Current Plan require explanation and correction, which BPS has not done to date.

## ARGUMENT

### I. Proposed Intervenors Are Entitled as of Right to Intervene in This Action.

Proposed Intervenors satisfy each of the requirements of Federal Rule of Civil Procedure 24(a)(2) for intervention as of right. Any party may intervene as of right if they have "an interest relating to the property or transaction that is the subject of the action, and [are] so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect [their] interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

The First Circuit requires Proposed Intervenors demonstrate that: 1) their motion is "timely;" 2) that they have an "interest relating to the property or transaction that forms the foundation of the ongoing action;" 3) that the "disposition of the action threatens to impair or impede [their] ability to protect [their] interest;" and 4) that no "existing party adequately represents" the proposed intervenors' interests. *Mullane v. Portfolio Media, Inc.*, No. 19-11496-PBS, 2020 WL 1931525 at *3 (D. Mass. Feb. 28, 2020) (*quoting Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011)). As a general matter, a court "must approach the four-factor test 'holistically' and keep a 'commonsense view of the overall litigation.'" *Id*. (*quoting Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998). All factors are satisfied here.

#### A. The Motion for Leave to Intervene is Timely.

This Court must consider four factors when deciding whether a motion to intervene is timely: "the length of time the would-be intervenor knew or reasonably should have known that its interest was imperiled before it moved to intervene; the foreseeable prejudice to the existing parties if intervention is granted; the prejudice to the would-be intervenor if intervention is denied; and exceptional circumstances which may militate against or in favor or allowing late

intervention." *Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 321–22 (1st Cir. 1997). These factors weigh in favor of timely intervention here.

This litigation is still in its infancy. The Court has not yet decided Defendant's Motion to Dismiss, with oral argument set for December 16, 2025. Proposed Intervenors' intervention would not disrupt that argument or timeline. Moreover, Proposed Intervenors would enter the litigation before the commencement of discovery, if the Motion to Dismiss is denied.

Similarly, no party will be prejudiced by the Proposed Intervenors' request to intervene in this matter. No decision has been issued by the Court nor has discovery commenced. Conversely, Proposed Intervenors would be significantly prejudiced if intervention is denied. No party would be able to adequately represent Proposed Inventors' interests, and these interests would potentially remain unprotected through any potential appeal. Finally, there are no exceptional circumstances that militate against intervention. The NAACP Boston Branch successfully intervened in the previously related litigation, and the same result should apply here. Accordingly, Proposed Intervenors' Motion to Intervene is timely.

### B. **Proposed Intervenors Have Important Interests in this Action.**

To intervene as of right, Proposed Intervenors must identify a viable interest "relating to the property or transaction that forms the foundation of the ongoing action." *Mullane*, 2020 WL 1931525, at *5 (*quoting Ungar*, 634 F.3d at 50). Proposed Intervenors' claims "must bear a sufficiently close relationship to the dispute between the original litigants" and the interests must be "direct, not contingent or speculative." *Id*. (*quoting Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 42 (1st Cir. 1992)) (quotation marks omitted). Here, Proposed Intervenors have viable, private, and direct interests that are intertwined with the dispute between Plaintiff and Defendants.

The Proposed Intervenors' interests in this litigation are direct, essential, and non-speculative. Neither of the Proposed Intervenors are represented by Defendants. At the outset, by alleging that "the Task Force was consumed with racial balancing" and attributing this "consumption" to a public school district, Plaintiff has invited this intervention. Dkt. No. 1 at paragraph 57.[14]

Proposed Intervenors are uniquely capable of speaking to the decades of socioeconomic exclusion experienced by their members, which the Current Plan serves to remedy. Proposed Intervenors have a longstanding interest in diversifying BPS's highly selective schools, promoting greater enrollment of socioeconomically diverse students in these schools, and ensuring equitable access to educational opportunities for their members, including students of varying socioeconomic levels.

A critical component of Proposed Intervenor's participation in this matter is their advocacy surrounding the benefits to students of *all* races, ethnicities, religions, regions, and socio-economic backgrounds that flow from a diverse student body. A graduate of BPS would be ill-prepared for society if the graduate has never befriended and/or learned beside another student with a completely different background, experience, and/or identity.[15] "Forty years of research has shown that socioeconomic diversity in schooling produces academic excellence, at both the high end and the low end of the socioeconomic spectrum."[16] "[S]tudents of all races and income levels are more likely to have higher math outcomes when they attend racially and socioeconomically diverse

---

[14] In so doing, Plaintiff has opened the door for Proposed Intervenors' participation in this matter as necessary and interested parties, at the very least, to challenge what Plaintiff has characterized as a "discriminatory" comment allegedly made while discussing the Current Plan.

[15] Molly Clever and Karen S. Miller, *"I Understand What They're Going through": How Socioeconomic Background Shapes the Student Service-learning Experience*, the American Sociological Association, Vo. 47(3), 205, 2019.

[16] Dr. Kelly Morris Roberts, *The Case for Balance: Socioeconomic Diversity and Its Impact on Schooling*, AASA Journal of Scholarship and Practice, Vol. 15, No. 4, 25, 2019.

schools." *Id.* Proposed Intervenors have long believed these findings demonstrate the importance of ensuring an institution's admissions policy, including at the secondary educational level, allows for the inclusion of a diverse array of students, including socioeconomic diversity.

### C. <u>Proposed Intervenors' Interests Will Be Impaired Absent Intervention.</u>

To determine whether intervention is required to protect an interest, courts apply a "practical test," querying whether the proposed intervenors' interests would be "adversely affected" based on the outcome of the lawsuit. *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 110–11 (1st Cir. 1999). Here, it is indisputable that Proposed Intervenors' interests would be adversely affected if Plaintiff prevails in the present lawsuit. Additionally, an adverse ruling on Defendants' Motion to Dismiss would similarly have direct, adverse, and immediate impact on the Proposed Intervenors and the constituents the organizations represent. Parent and student members of Proposed Intervenors have a clear and direct interest in preventing a disruption of the implementation of the Current Plan, and invalidation of the Current Plan would potentially risk a return to exclusionary practices to the detriment of socioeconomically diverse populations. Accordingly, Proposed Intervenors have satisfied the criteria for intervention as of right.

### D. <u>Existing Parties Do Not Adequately Represent Proposed Intervenors' Interests.</u>

Finally, Defendants cannot and will not adequately represent Proposed Intervenors' interests. Although there is a presumption that a governmental defendant will adequately represent the interests of a proposed intervenor,[17] that presumption is rebutted where—as here—the

---

[17] There is an "assumption," subject to "evidence to the contrary," that in cases where parties seek to intervene in support of a government defendant, the government will "adequately defend its actions, at least where its interests appear to be aligned with those of the proposed intervenor." *Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001).

Proposed Intervenors possess direct, private interests not shared by the governmental Defendant and where there is a potential and/or actual conflict between the parties. The First Circuit has distinguished between those cases where intervenors had "direct private interests" which the government "had and could have no interest in protecting" and those cases involving only a "tactical disagreement." *Id*. at 20. The First Circuit has cautioned against a "mechanistic application" of the language of presumption, noting that the facts of these cases "vary greatly" and the sufficiency of an explanation of inadequacy "must be determined in keeping with a commonsense view of the overall litigation." *Id*. (quotation omitted). The First Circuit has observed that the "likelihood of conflict or divergence of interest" can defeat any claim of adequate representation. *Cotter v. Mass. Ass'n of Minority Law Enf't Officers*, 219 F.3d 31, 35 (1st Cir. 2000).

Here, the Proposed Intervenors have "direct private interests" which Defendants have "no interest in protecting." *Maine*, 262 F.3d at 20. Proposed Intervenors view the Current Plan as *necessary* to combat past decades of exclusionary behavior of low income students. It is clearly not in BPS's interest to admit to or concede to decades of exclusionary behavior resulting from the implementation of its prior admissions policies. If Plaintiff is permitted to disrupt and dismantle the current admissions process, the prospects of admission into the highly selective schools will inevitably be diminished for Proposed Intervenors' constituents and will have a broader, more significant impact on Proposed Intervenors' constituents in other school districts that fall within the jurisdictions they serve.

Moreover, neither Plaintiff nor Defendants have an interest in clarifying or contextualizing alleged statements made by Sullivan. Defendants' Memorandum of Law in Support of Motion to Dismiss made no attempt to challenge the mischaracterizations of Sullivan's statements included

in the Complaint, *see* Dkt No. 20, evidencing that the Defendants likely have no intention of tackling that issue, which is a cornerstone issue in this matter.

II. **In the Alternative, the Court Should Exercise its Discretion to Grant Permissive Intervention.**

Should the Court elect not to grant leave to intervene as of right, permissive intervention should be granted. Aligned with the Court's prior decision involving almost identical parties, Proposed Intervenors respectfully request that the Court exercise its discretion to permit leave to intervene pursuant to Rule 24(b)(1). Three key factors should be considered: 1) the Proposed Intervenors' "claim or defense and the main action have a question of law or fact in common;" 2) the Proposed Intervenors' interests "are not adequately represented by an existing party;" and 3) intervention "would not result in undue delay or prejudice to the original parties." *In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992) (citation omitted). A district court "may consider almost any factor rationally relevant" to a motion for permissive intervention and enjoys "very broad discretion in granting or denying the motion." *Mass. v. U.S. Dep't. of Health & Human Servs.*, 289 F. Supp.3d 259, 265 (D. Mass. 2018) (*quoting Daggett*, 172 F.3d at 113).

Proposed Intervenors satisfy each of these elements. Their proposed defenses are inextricably woven with the main action. Defendants will not adequately represent the Proposed Intervenors' interests, as explained *supra*. Moreover, because the litigation is in the early stages, permissive intervention would not unduly delay or prejudice either the parties or the Court. Finally, and as discussed *supra*, Proposed Intervenors are uniquely positioned to offer testimony and briefing on the indignities and harms of socioeconomic isolation and the detriment BPS's historical admissions standards has on students from diverse socioeconomic backgrounds.

# CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that the Court grant the Motion for Leave to Intervene, allowing intervention as of right in this matter pursuant to Rule 24(a), or, alternatively that the Court exercise its discretion to permit intervention pursuant to Rule 24(b).

Dated: November 25, 2025

Respectfully submitted,

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE NEW ENGLAND AREA CONFERENCE AND NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE BOSTON BRANCH

_____
Doreen M. Rachal (BBO# 667837)
Luke A. Mears (BBO# 715488)
SIDLEY AUSTIN LLP
60 State Street, 36th floor
Boston, Massachusetts 02109
Tel: (617) 223-0300
drachal@sidley.com

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)

The undersigned counsel for the Proposed Intervenors certify that they have conferred with counsel for the plaintiff and defendant by email on November 25, 2025 to narrow or resolve the issues raised in the motion, specifically relating to the request to intervene in this matter.

Dated: November 25, 2025

Doreen M. Rachal (BBO# 667837)
drachal@sidley.com

## CERTIFICATE OF SERVICE

I, Doreen M. Rachal, hereby certify that a true and accurate copy of this document, which was filed via the Court ECF system, will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 25, 2025.

Dated: November 25, 2025

Doreen M. Rachal (BBO# 667837)
drachal@sidley.com