UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON PARENT COALITION FOR ACADEMIC EXCELLENCE CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOSTON SCHOOL COMMITTEE and MARY SKIPPER, in her official capacity as Superintendent of the Boston Public Schools, <br><br> Defendants. | No. 1:25-cv-12015-WGY <br><br> **PLAINTIFF'S OPPOSITION TO MOTIONS FOR LEAVE TO INTERVENE AS DEFENDANTS** |

Two sets of proposed intervenors seek to intervene alongside the Boston School Committee to defend the Tier Plan for admission to Boston's three "Exam Schools." Plaintiff Boston Parent Coalition for Academic Excellence does not dispute that these groups and their members have a strong interest in the outcome of this case. But because they intervene to seek the same result as the School Committee, the School Committee adequately represents their interests, leaving them no right to intervene. Nor is there any good case for permissive intervention, as proposed intervenors can add their perspectives to the case through amicus participation. These groups do not need party status to make their arguments.

## BACKGROUND

The Coalition sued the School Committee and Superintendent Mary Skipper (collectively, the School Committee) on July 17, 2025, alleging that the various iterations of the Tier Plan were implemented to limit the enrollment of white students at the Exam Schools. (Dkt. No. 1). The School Committee moved to dismiss on September 11, arguing that the Coalition could not show either disparate impact or discriminatory intent under the First Circuit's decision in *Boston Parent Coalition for Academic Excellence Corp. v. School Committee*, 89 F.4th 46 (1st Cir. 2023)—the

Coalition's challenge to the School Committee's previous Zip Code Plan. (Dkt. Nos. 19–20). This Court has set a hearing on the School Committee's motion for December 16.

On November 24, the first group of proposed intervenors moved to intervene. This group includes the Boston Education Justice Alliance and the Asian Pacific Islanders Civic Action Network, representing both themselves and members planning to apply to the Exam Schools. (Dkt. Nos. 29–30). The next day, the NAACP New England Area Conference and NAACP Boston Branch filed a separate motion to intervene as defendants. (Dkt. Nos. 45–46). While the first group of proposed intervenors sought the Coalition's position on their motion in an email from counsel on November 11, the NAACP proposed intervenors did not contact counsel for the Coalition regarding their separate motion until after it was filed on the evening of November 25. The Coalition opposes both motions, largely for the same reasons.

## ARGUMENT

### I. Proposed Intervenors Are Not Entitled to Intervene as of Right

Rule 24(a)(2) permits a proposed intervenor to intervene as of right if the proposed intervenor meets several requirements. Proposed intervenors here devote much of their briefs to laying out the interests of the organizations and members in defending the Tier Plan and explaining how the Coalition's victory in this case would adversely affect these interests. The Coalition does not dispute that either group of proposed intervenors meet these requirements. Given the admissions results under the Tier Plan, the organizations and their members undoubtedly have an interest in defending it.

The problem for both sets of proposed intervenors is that the School Committee is already vigorously defending the Tier Plan. The School Committee has filed a motion to dismiss for failure to state a claim, seeking the same result proposed intervenors want. Proposed intervenors are not

permitted to intervene as of right if "existing parties adequately represent [their] interest." Fed. R. Civ. P. 24(a)(2). Yet all the proposed intervenors share a common objective with the School Committee—dismissal of this action, which would permit the School Committee to continue using the Tier Plan in the future. As shown below, under First Circuit precedent, this is enough to establish that the School Committee adequately represents the proposed intervenors' interests.

It is long settled that "[w]here the party seeking to intervene has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation." *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979). Only the proposed intervenor's showing of "adversity of interest, collusion, or nonfeasance" will overcome the presumption. *Id.*

The general presumption of adequacy is heightened when the proposed intervenor seeks to intervene alongside a government defendant already defending the government's actions. Courts in this circuit "have been quite ready to presume that a government defendant will 'adequately represent' the interests of all private defenders of the statute or regulation unless there is a showing to the contrary." *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999). In the "recurring situation" where "a group with recognized interests wishes to intervene and defend an action of the government which the government itself is defending," the bar for overcoming the presumption of adequacy is "raised higher." *Maine v. Director, U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001). Again, so long as the proposed intervenor and the government defendant seek the same "ultimate goal" in the litigation, it's presumed that the government defendant's defense will adequately represent the proposed intervenor's interests. *See T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 39 (1st Cir. 2020)

3

To overcome this presumption, proposed intervenors typically must make some non-speculative showing that the government defendant might not zealously defend its actions—for example, that the government defendant had agreed to a settlement that would harm the interests of proposed intervenors. *See Mass. Food Ass'n*, 197 F.3d at 567 (citing *Pub. Serv. Co. v. Patch*, 173 F.R.D. 17 (D.N.H. 1997), a case where "the agency had not filed an answer to the complaint but had instead accepted a consent decree providing for virtually all the relief sought and subjecting [the proposed intervenors] to more stringent rules . . . ."). Tactical disagreements like a preference for a different legal strategy or adversity between the parties in the past or outside of the litigation are not enough to overcome the presumption of adequate representation. *See id.* (desire to make other legal arguments does not create adversity of interest as such arguments can be "easily presented in amicus briefs"); *Maine*, 262 F.3d at 20 ("An earlier adverse relationship with the government does not automatically make for a present adverse relationship."). Such things might tip the scales only if they tend to raise questions about "the government's zeal in adequately defending" its action. *Maine*, 262 F.3d at 20.

Neither set of proposed intervenors come close to making such a showing here. The School Committee zealously defended against the Coalition's challenge to the ZIP Code Plan. The School Committee won that case in the First Circuit and then successfully opposed the Coalition's petition for a writ of certiorari in the Supreme Court. And when the Coalition challenged the Tier Plan in this case, the School Committee moved to dismiss and continues to defend its actions vigorously. We have almost five years of evidence that the School Committee is highly unlikely to do anything like the agency did in *Patch*: agree with the Coalition and enter into a consent decree that disadvantages proposed intervenors or their members. Instead, it has defended and will continue to defend the Tier Plan.

None of proposed intervenors' arguments make a dent in the presumption. The first set of proposed intervenors make three main arguments. First, they argue that they and their members have a direct stake in the Exam School admissions process and that "there is a conflict between Proposed Intervenors' and Defendants' arguments which can be 'reasonably predicted.'" Dkt. No. 30 at 15 (quoting *Daggett v. Comm'n on Gov'tl Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999)). But "would-be intervenors will nearly always have intense desires that are more particular than the state's (or else why seek party status at all)." *Stuart v. Huff*, 706 F.3d 345, 353 (4th Cir. 2013); *see also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 50 (D. Mass. 2015) (rejecting the argument that Harvard could not represent the specific experiences of students who benefit from the challenged admissions process). *Daggett* speaks of an actual conflict of interest between the government and the proposed intervenors, but here the only "reasonably predicted" conflict between them is over the way each intends to defend the Tier Plan. *See* Dkt. No. 30 at 15. *Massachusetts Food Association* teaches that such differences in legal strategy do not amount to adversity of interest so long as both advocate for the same result—here, defending the Tier Plan.

Second, the first set of proposed intervenors attempt to manufacture a conflict of interest between themselves and the School Committee by noting that the School Committee has adjusted the Tier Plan in ways proposed intervenors dislike, and that it may do so in the future. Dkt. No. 30 at 16–17. But this is no different than the situation in *Maine*, where the environmental group sought intervention on the grounds that the government had previously opposed the species designation and may do so again. *Maine*, 262 F.3d at 18–20. The dispositive fact in that case was that the government had in fact done what the group wanted and was defending it in the lawsuit. *See id.* at 18 ("[T]he government has made the choice to designate the species as endangered, and the result

is what the proposed intervenors wanted."). Here, proposed intervenors may not like the current iteration of the Tier Plan as much as they liked previous iterations, but like the School Committee, proposed intervenors still want to defend it. After all, this litigation is not a forum for proposed intervenors to lobby the School Committee for other preferred changes to the Exam School admissions process. For the purposes of this case, then, proposed intervenors and the School Committee are perfectly aligned.

*Cotter v. Massachusetts Association of Minority Law Enforcement Officers*, 219 F.3d 31 (1st Cir. 2000), is not to the contrary. There, white police officers challenged the promotion process in the Boston Police Department as racially discriminatory, and minority officers who were promoted sought to intervene. *Id.* at 32–33. This Court reversed the denial of their intervention motion, holding that the minority officers could overcome the presumption of adequacy because there was "enough likelihood of conflict or divergence" between the minority officers and the city. *Id.* at 36. But the conflict was over the minority officers' desire to argue that the city's *current* promotion tests were racially discriminatory. *Id.* at 35–36. Here, on the other hand, proposed intervenors' desire to focus on the supposedly exclusionary aspect of the ISEE and past admission criteria does not create any conflict with the School Committee. Proposed intervenors and the School Committee are in alignment that the Tier Plan does not trigger strict scrutiny because it was not implemented with discriminatory intent—the only issue in this case.

Finally, citing *T-Mobile*, the first set of proposed intervenors argue that they will provide some sort of "missing element" that the School Committee will not advocate on its own. Dkt. No. 30 at 18. This simply repackages proposed intervenors' insistence that they will make legal arguments the School Committee is uncomfortable making, such as those that implicate the Exam Schools' prior longstanding merit-based admissions practices as discriminatory. Even if there

might be some circumstances where intervention might be warranted on this basis, this case would not fit the bill. Proposed intervenors' arguments are at best a background perspective, which can be presented fully in an amicus brief. *See Mass. Food Ass'n*, 197 F.3d at 567. Proposed intervenors do not require party status to provide this perspective, and their determination to present their arguments does not create adversity of interest.

The NAACP proposed intervenors do not make any substantively different legal arguments in support of inadequacy. Instead, they argue that the School Committee "made no attempt to challenge" supposed "mischaracterizations" in the Complaint of comments by then-NAACP Boston Branch President (and current NAACP New England Area Conference President) Tanisha Sullivan. (Dkt. No. 46 at 2, 12–13). But Sullivan's comments are a matter of public record—they do not require interpretation by the NAACP proposed intervenors. The School Committee's choice not to focus on those comments is a matter of litigation strategy. If the NAACP proposed intervenors want to put forth their view of Sullivan's comments, they can seek to do so in an amicus brief. Such a tangential matter does not come close to overcoming the presumption of adequacy, nor does it require party status.

Simply put, proposed intervenors are not entitled to intervene as of right because they seek the same result as the School Committee, which is defending its actions with vigor once again. To the extent proposed intervenors have disagreements with the School Committee about litigation strategy, legal arguments, or education policy, those are best presented in the legislative arena or in an amicus brief. Such disagreements do not entitle proposed intervenors to party status.

## II.  The Court Should Deny Proposed Intervenors' Request for Permissive Intervention

Although proposed intervenors are not entitled to party status, the Court in its discretion still may grant permissive intervention under Rule 24(b). The Court "can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion." *Daggett*, 172 F.3d at 113.

This case is functionally similar to *Students for Fair Admissions*, where students who might have benefitted from Harvard's race-conscious admissions criteria sought to intervene alongside Harvard to defend the process. After denying intervention as of right, this Court also denied permissive intervention on several grounds relevant here, including that "allowing fourteen Students to intervene as parties would further complicate proceedings, lengthen the discovery process, add expense, and significantly delay the ultimately resolution of this case," and "intervention is unwarranted where Harvard adequately represents the Students' interests." 308 F.R.D. at 52. It further noted that amicus status was sufficient for the students "to present their views and arguments in this case." *Id.*

For the same reasons, amicus status is sufficient for proposed intervenors in this case. Proposed intervenors do not need party status to make their arguments. Adding more parties to the case would simply make it more complex with no corresponding benefit to the existing parties or to the decision-making process. Simply put, adding the proposed intervenors as parties would unnecessarily complicate the litigation, while gaining nothing. Therefore, in its discretion, the Court should deny proposed intervenors' request for permissive intervention in favor of allowing their participation as amici.

## CONCLUSION

For the reasons stated, the Coalition respectfully requests that the Court deny both motions to intervene.

Dated: December 8, 2025.

Respectfully submitted,

/s/ Christopher M. Kieser

| | |
|---|---|
| JONATHAN HOUGHTON<br>Mass. Bar No. 641688<br>Pacific Legal Foundation<br>3100 Clarendon Blvd., Suite 1000<br>Arlington, VA 22201<br>(202) 888-6881<br>jhoughton@pacificlegal.org<br><br>GLENN E. ROPER*<br>Colo. Bar No. 38723<br>Pacific Legal Foundation<br>1745 Shea Center Drive, Suite 400<br>Highlands Ranch, CO 80129<br>(916) 503-9045<br>geroper@pacificlegal.org | CHRISTOPHER M. KIESER*<br>Cal. Bar No. 298486<br>ERIN E. WILCOX*<br>Cal. Bar No. 337427<br>Pacific Legal Foundation<br>555 Capitol Mall, Suite 1290<br>Sacramento, CA 95814<br>(916) 419-7111<br>ckieser@pacificlegal.org<br>ewilcox@pacificlegal.org |

*Pro Hac Vice*

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I, Christopher M. Kieser, hereby certify that the foregoing document was served on the date referenced above on all represented Parties through PACER/NEXTGEN, and that there are no unrepresented participants.

/s/ Christopher M. Kieser
CHRISTOPHER M. KIESER
